# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

JAMES ONEAL WESS                                                        PLAINTIFF

VS.                                              CIVIL ACTION NO: 1:13-CV-481 -LRA

WANDA HOLMAN                                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

THIS CAUSE came before the Court for trial on January 21, 2015. Plaintiff James Oneal Wess testified and presented the testimony of his witness, Lt. Alecia Chapple. Defendant Wanda Holman testified on her own behalf and presented witnesses John D. Rodgers, Director, Investigation Division, Mississippi Department of Corrections [MDOC], and MDOC State Medical Director Dr. William T. Brazier, Plaintiff's ARP grievance file[1], the Corrections Investigation Division Report [CID] of the incident,[2] and Plaintiff's medical records[3] were admitted into evidence. James Oneal Wess was incarcerated in the custody of  MDOC at the Mississippi State Penitentiary in Parchman, Mississippi, on September 2, 2010, when the incident he complains of occurred. He has since been transferred to the East Mississippi Correctional Facility ["EMCF"] in Meridian, Mississippi.  Defendant Epps was dismissed by the Court in an earlier opinion [33], and Defendant Officer Brown is no longer employed by MDOC and has never been served.[4]

---

[1] ECF No. 47; Exhibit D-1 (Plaintiff's ARP File).

[2] ECF No. 48; Exhibit D-2 (Corrections Investigation Division Report).

[3] ECF No. 49; Exhibit D-3 (Plaintiff's SEALED Medical Records).

[4]As noted in the Court's September 10, 2014, Order [33], counsel for the other Defendants was unable to identify or locate Defendant Brown. [28].  Plaintiff was notified at the omnibus hearing on January 24, 2013, that Defendant Brown had not been served with process.  Plaintiff was notified on June 21, 2013, that defense counsel had

**FACTS**

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff claims in his Complaint that Defendants failed to protect him from being stabbed by other inmates in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff testified that on September 2, 2010, while he was delivering food trays at Parchman, Defendants purposely opened sally port doors, allowing a dozen unrestrained inmates to stab and beat Plaintiff and another inmate, "Corrie Wicks," even though Plaintiff was in protective custody at the time in Zone A. Plaintiff also testified that the attackers were yelling at Defendant Holman and Defendant Brown, saying "we paid you, now open the door!" Plaintiff claims that his attackers should have been in their cells and not loose "on the tier."

Plaintiff testified that Zone B houses inmates who are in gangs, classified as "behavior modification," or "security threat groups." He charges that Defendant Holman was stationed in the tower during the assault. The tower is elevated, with three windows to view the floor, and it is equipped with monitors of both the Zone A hall and the Zone B hall. According to Plaintiff, Defendant Holman was paid by these gang members to open the door from the tower in order for them to attack both Plaintiff and the other inmate Wicks. Wicks was the actual inmate the gang members intended to assault; Plaintiff was an innocent bystander.

Following the assault, Plaintiff was taken to the hospital by Officer Graycee where he was examined by the medical staff there. MDOC Medical Director Dr. William Brazier was qualified as an expert witness, and he had reviewed Plaintiff's medical files prior to trial. He was not the doctor who examined Plaintiff after the attack, however.

---

been unable to locate Defendant Brown. [28]. Plaintiff took no further action to pursue his claim against Defendant Brown though the Court's prior order warned Plaintiff that it was his duty to prosecute this case. [9]. In this Order [33], the claims against Defendant Brown were dismissed without prejudice for failure to serve process as required by Fed. R. Civ. P. 4m.

Dr. Brazier testified that Plaintiff's medical records confirmed that Plaintiff suffered multiple stab wounds to the back, left arm, and a puncture wound to the left abdomen. Plaintiff was treated with an antibiotic, Gentomycin, and given a tetanus shot. Dr. Brazier testified that Plaintiff's stab wounds were superficial and did not require suturing. Plaintiff did not require an overnight stay at the hospital. Dr. Brazier could not testify as to whether Plaintiff suffered any permanent impairment as a result of the assault because he had not examined Plaintiff himself at the time of his stabbing.

Following assessment and treatment of his wounds, Plaintiff was placed in the "red zone" for two weeks to heal. He filed an Administrative Remedy Program ("ARP") grievance approximately one week after the assault, complaining that the officers had failed to protect him while he was in protective custody." He did not claim in his ARP that either Defendant Holman or Brown conspired with the gang members to assault him by taking bribes to open the zone door.

Chief Investigator John Rodgers testified that he was informed of the assault the same date it occurred, and he went to the scene and investigated. He testified that he met Plaintiff at the hospital to question him about the stabbing incident.  He later assigned the investigation to Investigator James on October 22, 2010, who prepared the Criminal Investigation Division [CID] report. According to the CID report, the stabbing occurred as a result of an error with the operation of the Zone A and B doors, and this allowed inmates from Zone-B onto the Zone A hall where Plaintiff and Wicks were serving food trays. Nothing in the investigation showed any intentional involvement by Holman in the assault, nor any evidence of payment or other inducement to open the Zone-B doors. The investigation ultimately concluded that Defendant Holman inadvertently opened both Zone-B doors and Zone-A doors at the same time.   She was disciplined by being suspended for five days due to her failure to secure the door.

Plaintiff contends that Defendant Wanda Holman, knowingly and intentionally opened the doors to Zone-B allowing the inmates to assault him. He contends she accepted a bribe from Zone-B inmates to do so. Plaintiff also contends that without "override" from the tower, it is impossible for doors to both Zone-B and Zone-A to be opened at the same time. He maintains that such an "override" was performed by Holman, who was bribed by inmates to open the doors, consequently resulting in him being assaulted and stabbed multiple times by inmates.

Plaintiff testified that he informed Chief Investigator John Rodgers, who interviewed him at the hospital following the assault, that Holman was paid by the inmates to open the door to Zone-B. Rodgers denied recalling any accusations of bribery by the Plaintiff. He testified that any type of corruption is investigated aggressively; had Plaintiff told him that, he would have investigated it and it would have been in the CID report.

Plaintiff also testified that MDOC Lt. Alecia Chapple told him she had been approached by inmates attempting to bribe her. However, Lt. Chapple denied ever speaking with Plaintiff, or any knowledge of bribery, or any knowledge of Holman being involved in any bribery scheme or plan for assault.

Defendant Wanda Holman testified on her own behalf. She testified that she was stationed on the tower at the time the assault occurred. She could see the hallway to both Zone A and B on the monitor, and she did see several inmates at the door of Zone-B on the day the incident occurred but attributed it to "they were waiting for breakfast." She saw inmates Wess and Wicks getting the breakfast trays ready, and she opened the sally port door when the trays were ready. When she attempted to close the sally port doors, the tier doors (about 10 feet apart) started opening, and the inmates started coming in to attack Wess and Wicks. The inmates had jammed the sally port door, allowing just enough opening to allow them to get through. They can jam the door, but it will show as

secure on the control panel.  According to Holman, the panel showed that the door was secure on that day.  The sally port door must be shut before the tier doors can be opened when the system is operating correctly.   Holman testified that she was suspended for five days without pay because the tier door failed while she was operating it.

Defendant Holman specifically testified that she did not intentionally open the door; that she was not threatened, intimidated, or paid to open the door or help the inmates in any way to assault Wess and Wicks.  She testified that she had no prior knowledge that an assault was about to occur, and her actions were a mistake, not done on purpose.

## LEGAL ANALYSIS

The Eighth Amendment requires that prison officials protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To establish a failure-to-protect claim under section 1983, Plaintiff must show that he is/was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).  *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998);  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).  Further, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference."  *Newton*, 133 F.3d at 308 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Yet, the Court in *Farmer* stated that "[n]ot every injury by one prisoner at the hands of another translates into . . . liability for prison officials responsible for the victim's safety."  511 U.S. at 834.  The conditions must pose a substantial risk and Defendant must be aware of the facts first, and then be deliberately indifferent to the risk of harm.

In this case, Plaintiff concedes that he had no idea that these inmates were going to attack him. In fact, he believes that they were after Wicks, the other inmate who was stabbed, and not him. He had not red-tagged any of the inmates and did not fear that these inmates would attack him. Therefore, if Defendant Holman did not intentionally open the door, but it was merely a negligent act, there is no constitutional violation. 42 U.S.C. § 1983 has never been interpreted to provide that simple negligence on the part of a prison official is a basis for a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986)*; Davidson v. Cannon*, 414 U.S. 344 (1986). Other than his allegations of a bribe, and an intentional act on the part of Holman, Plaintiff has not set forth any other conditions which would have warned Holman that these inmates posed a substantial risk to his safety. If Plaintiff has proven that Holman did accept a bribe, and purposely opened the door, he has clearly stated a constitutional claim.

This Court must carefully weigh all of the evidence in this case to determine if Plaintiff has met his burden of proving by a preponderance of the evidence that Defendant Holman intentionally allowed him to be assaulted by accepting money to open the door or by intentionally opening the door.

Plaintiff's evidence consists only of his testimony that he heard the inmates say that they paid Defendant Holman to open the door. His witness, Lt. Alecia Chapple, failed to corroborate his claims, denying that anyone offered her a bribe to open the door, and denying that she told Plaintiff that someone had. Plaintiff failed to put this claim in his ARP, as he only charged "failure to protect," not mentioning his contention that Defendant Holman was bribed to open the door. Much of Plaintiff's evidence consisted only of his testimony explaining how the doors worked and his belief that Holman *had* to have intentionally opened the door, or it would not have opened. When asked as to whether Holman could have made an honest mistake, Plaintiff testified that it could have been— but that she opened that door, and "she knew better."

6

Plaintiff has little or no corroborating evidence to his testimony that Holman was bribed.  In contrast, Defendant Holman testified, categorically denying that she purposely opened the door or that she was ever paid for opening it.  Other evidence corroborated her testimony.  John Rodgers, the director of the Investigation Division at MDOC, testified that he went to the scene of the stabbing and interviewed Plaintiff.  Plaintiff did not charge that Holman purposely opened the door— had he told Rodgers that, he would have investigated the incident for corruption.  Rodgers testified that he assigned the investigation to Star James, a veteran investigator, and he had reviewed her report.  The conclusion of the investigation was that an error in the operation of the security gates allowed the attackers in.  The report concluded that two doors were opened at the same time, first the security door and then the zone gate.  Holman was punished for that, but there was no evidence that she did it purposely or that she was paid or otherwise given some inducement to help the attackers.  The results of the investigation characterized the actions of Holman as a "mistake."

The Court has carefully weighed the evidence and finds that Plaintiff has failed to prove by a preponderance of the credible evidence that Defendant Holman purposely opened the prison door to let in Plaintiff's attackers.  He may have proven negligence on her part, but negligence is not actionable under the United States Constitution.

## **CONCLUSION**

The Court finds that the Plaintiff has failed to carry his burden of proof that by a preponderance of the evidence that Defendant Wanda Holman was deliberately indifferent to his need for protection. Plaintiff also failed to prove by a preponderance of the evidence any existence or acceptance of a bribe by Defendant Holman to open Zone-B doors.

IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with prejudice as to all Defendants, and Final Judgment shall be entered on this date in favor of Defendants Epps and Holman.

SO ORDERED, this the 17th day of February, 2015.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE